Welsh v. The State.

No. 15,834.

## WELSH v. THE STATE.

INTOXICATING LIQUOR. — *Unlawful Sale.* — *Beer.*—*Sufficiency of Affidavit.*— In a prosecution under section 5320, R. S. 1881, for the sale of intoxicating liquors without a license, an affidavit charging the defendant with the unlawful sale of beer is not subject to the objection that it does not charge the sale of malt or intoxicating liquor. Beer is a malt liquor, and is, by the statute (section 5313, R. S. 1881), declared to be an intoxicating liquor.

SAME.—*Ohio River.*—*Jurisdiction.*—Where the Ohio river constitutes the boundary between the States of Kentucky and Indiana, low-water mark on the north side of the river is the southern boundary of the State of Indiana; but under sections 1 and 2, article 14, of the State Constitution, and an act of the Commonwealth of Virginia, entitled " An act concerning the erection of the district of Kentucky into an independent State," 1 Rev. Laws of Virginia, p. 57, the State of Indiana has concurrent jurisdiction in civil and criminal cases with the State of Kentucky on the Ohio river, as far as said river forms the common boundary between said States.

SAME.—*Sale of on Ohio River.*—*Indictment.*—*Venue.*—Where a violation of the criminal laws of this State, occurs on the Ohio river it is proper to charge in the indictment that the offence was committed in the county opposite the place where the act was committed constituting the crime; and hence, where intoxicating liquors are sold without license in a boat anchored in the Ohio river opposite Harrison county, Indiana, south of low-water mark on the Indiana side, the offender may be charged, tried and convicted in Harrison county, Indiana.

SAME.—*Absence of Provision Granting License to Sell on Ohio River.*—*Sale Without License.*—The fact that no provision is made by law for granting a license to sell intoxicating liquors upon the Ohio river does not authorize the sale thereof without a license.

SAME.—*License Law.*—*Constitutionality of.*—The license law providing for the granting of license to retail intoxicating liquors, requiring that the vender shall be a male inhabitant of the State, is not in conflict with that section of the Constitution of the United States which provides that " The citizens of each State shall be entitled to all privileges and immunities of citizens of the several States."

INSTRUCTIONS TO JURY.—*Request for Made after Argument Begun.*—*Refusal of.*—An objection that the court erred in refusing to instruct the jury in writing, as requested, will not avail on appeal where it does not affirmatively appear by the record that the request was made before the commencement of the argument in the cause.

CRIMINAL LAW.—*Instruction.—Fine.—Costs.*—In a prosecution for the unlawful sale of intoxicating liquors, an instruction requested that "If you should find the defendant guilty, as charged, you may, in your discretion, return a verdict assessing a fine against him, and also find that he shall not pay the costs of this prosecution," may be properly refused. In such a case it is not discretionary with the jury to fine, or not to fine, the defendant, but they must assess a fine against him of not less than the prescribed amount ; nor is it a matter of mere arbitrary discretion with the jury to relieve a defendant, found guilty, of the payment of costs, but a reason for so doing must be shown.

SAME.—*Discharge of Jury.—Instruction Ordering Acquittal.of Defendant.*—In a criminal prosecution an instruction requested placing the right of the defendant to an acquittal upon the mere fact that a jury had been empanelled, without any regard to the facts which may have led to their discharge, is erroneous.

SAME. — *Reception of Verdict.—Absence of Accused.* — An objection in a criminal case that the trial court erred in receiving the verdict of the jury in the absence of the defendant, will not be available on appeal for a reversal of the judgment where it does not affirmatively appear by the record that the defendant was in the custody of the sheriff, and it does not appear, except by inference, that he was not present in court at the time the verdict of the jury was received.

From the Harrison Circuit Court.

*E. D. Kelso,* for appellant.

*L. T. Michener,* Attorney General, *J. L. Suddarth,* Prosecuting Attorney, and *J. H. Gillett,* for the State.

COFFEY, J.—This was a prosecution, instituted by the State against the appellant, before a justice of the peace, for an alleged violation of the provisions of section 5320, R. S. 1881.

That section provides that any person, not being licensed according to the provisions of the act of which it constitutes a part, "who shall sell or barter, directly or indirectly, any spirituous, vinous, or malt liquors in a less quantity than a quart at a time, or who shall sell or barter any spirituous, vinous, or malt liquors to be drunk, or suffered to be drunk, in his house, out-house, yard, garden or the appurtenances thereto belonging, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined," etc.

The affidavit in this cause charges that on, etc., at the county of Harrison and State of Indiana, James Welsh did then and there unlawfully sell to one Andrew J. Glaze, at and for the price of five cents, a less quantity than a quart of beer at a time, to wit, one glass of beer, containing a half pint, he, the said James Welsh, not then and there having a license to sell intoxicating liquors in a less quantity than a quart at a time, in force at the time, according to the laws of said State, contrary to the form of the statute in such cases, made and provided, etc.

The appellant was convicted before the justice, and appealed to the circuit court, where he was again convicted, and now appeals to this court, seeking a reversal of the judgment rendered against him in the circuit court.

His first contention is that the affidavit above set out is defective, because it is not charged that the beer therein named was malt beer, or that it was intoxicating.

Section 5313, R. S. 1881, enacts that "The words 'intoxicating liquor' shall apply to any spiritous, vinous, or malt liquor, or to any intoxicating liquor whatever, which is used or may be used as a beverage."

In the case of *Myers* v. *State*, 93 Ind. 251, it was held by this court that the primary meaning of the word " beer " is fermented liquor made from any malted grain, with hops or other bitter flavoring matter.   In other words, it means a malt liquor.

The affidavit before us, therefore, charges that the appellant sold malt liquor, which is declared by our statute to be within the words " intoxicating liquor."

An affidavit like this, charging a person with the unlawful sale of " beer," contrary to the form of the statute in such cases made and provided, is not, in our opinion, subject to the objection that it does not charge the sale of malt or intoxicating liquor.

The court did not err in overruling the appellant's motion in arrest of judgment.

It is disclosed by the evidence in the cause that the beer in question was sold from a boat, anchored in the Ohio river, near the south line of Harrison county, in this State. There is some conflict in the evidence as to whether the boat was anchored north or south of the line known as low-water mark. It is contended by the appellant that low-water mark on the Ohio river at this point is the southern boundary of the State, and that for this reason it does not appear that the beer was sold in Harrison county or in the State of Indiana.

Where the Ohio river constitutes the boundary between the States of Kentucky and Indiana, low-water mark on the north side of the river is the southern boundary of the State of Indiana. *Indiana* v. *Kentucky*, 136 U. S. 479.

But assuming that the appellant's boat, from which he sold the beer in question, was anchored south of the south line of the State, we do not think it follows that he may not be charged, tried, and convicted in Harrison county, Indiana.

Section 1, article 14, of our Constitution provides that the State shall be bounded on the south by the Ohio river from the mouth of the Great Miami river to the mouth of the Wabash.

Section 2, of the same article, declares that the State shall possess jurisdiction and sovereignty co-extensive with the boundaries declared in the preceding section; and shall have concurrent jurisdiction, in civil and criminal cases, with the State of Kentucky on the Ohio river, and with the State of Illinois, on the Wabash river, so far as said rivers form the common boundary between this State and said States respectively.

Section 1578, R. S. 1881, provides that "When an offence is committed in this State or on the boundary thereof, on board a boat or vessel navigating a river, lake, or canal, or lying therein, the jurisdiction is in the county within or opposite to which the offence was committed."

Section 1579 provides that " The proper courts of the sev-

eral counties in this State bordering on the Ohio river, and on
the Wabash river as far up as said river forms the boundary
line between this State and the State of Illinois, shall have
jurisdiction of all offences committed against the penal laws
of this State on said rivers opposite to said counties respect-
ively."

The right of the State of Indiana to exercise both civil
and criminal jurisdiction, concurrent with the State of Ken-
tucky, is secured by an act of the Commonwealth of Vir-
ginia, entitled " An act concerning the erection of the district
of Kentucky into an independent State," passed December
18th, 1789.   1 Revised Laws of Virginia, p. 57.

By reason of the constitutional provisions above referred
to, and statutory provisions similar to those here set out, it
has been held by this court that where a violation of the
criminal laws of this State occurs on the Ohio river it is
proper to charge, in the indictment, that the offence was
committed in the county opposite the place where the act was
committed constituting the crime.   *Carlisle* v. *State,* 32 Ind.
55 ;  *Dugan* v. *State,* 125 Ind. 130.

It will thus be seen that the criminal laws of the State ex-
tend to, and are in force on the Ohio river where such river
constitutes the southern boundary of the State.   The con-
tention of the appellant, that because no provision is made
by law for granting a license to sell intoxicating liquors upon
the Ohio river, he has a right to sell without a license, is not
tenable.   As it is made unlawful to retail intoxicating liquor
within the jurisdiction of the State without a license
so to do, and as there is no law authorizing the granting
of a license to sell upon the waters of the stream, it
may be that as to the space between low-water mark on the
Indiana shore and low-water mark on the Kentucky
side, we have absolute prohibition in so far as the right to
sell liquors by retail is involved.   The difficulty attend-
ing the detection, arrest, and punishment of violators of the
law, engaged in the retail liquor business on the water would

seem to furnish a sufficient reason to the Legislature for withholding a license to sell upon the Ohio or Wabash rivers, where such rivers constitute the boundary of the State.

It is to be observed that we are not dealing with a person navigating the Ohio river, engaged in interstate commerce, but the case before us is one where the offender, not engaged in navigation, anchors his boat near the Indiana line, and engages in the business of retailing intoxicating liquor without a license. Such a case, in our opinion, falls both within the letter and the spirit of our statute, and it is no defence to say that the law makes no provision for granting a license to sell at that place.

It is further contended that our law providing for the granting of license to retail intoxicating liquor is in conflict with section 2, article 4, of the Constitution of the United States, which provides that " The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

It is contended that as the law withholds a license from all persons except male inhabitants of the State, it denies to citizens of other States the same rights that are enjoyed by the people of Indiana, and for this reason the law is void.

The argument is that beer and other intoxicating liquor are property, as much so as hogs, horses, grain, or any other personal property, and that under the Federal Constitution the citizens of any State in the Union have the right to sell such property any where within the United States, where the sale of such property is tolerated, and that a citizen of a sister State can be deprived of no right to sell which is enjoyed by the citizens of the State where he offers his property to the public.

It is undoubtedly true that the common law does not recognize any difference between intoxicating liquors as property and any other species of property. But while it is true that intoxicating liquor is property, still its inherent character is such that it is the proper subject of the police

power.    *Harrison* v. *Lockhart,* 25 Ind. 112; *Hedderich* v. *State,* 101 Ind. 564.

Were it not for statutory restrictions and prohibitions every person would be as free to engage in the business of manufacturing and selling intoxicating liquor as he would be to engage in the manufacture and sale of any other property.    It is not true, as is sometimes argued, that the citizen derives his right to sell intoxicating liquor from the particular State in which he sells.    In selling he is but exercising his common law right.

All laws regulating and imposing burdens on the business are prohibitory in their character.    There is no difference between an absolute prohibitory law, a law providing for local option, and license law, except in the extent to which they prohibit the manufacture and sale of intoxicating drinks.    An absolute prohibitory law deprives all within its reach from engaging in the business; a local option law prohibits all within a given locality from selling within that locality; while a license law prohibits all within the State, who have not obtained a license, from engaging in the business of retailing intoxicating liquors.    Each of these is a restriction upon the common law right of the individual citizen.

The first wholly deprives him of the right, while the other two prohibit him to a limited extent.

Acting upon the just assumption that the unrestricted sale of intoxicating liquors results in much evil, and that it is detrimental to society, the law-making power of each State in the Union has, in the exercise of its police power, assumed to control, regulate or prohibit the business, as seemed to it best.    The extent to which such power shall be exercised must, of necessity, be left to the law-making power of the State exercising such right.

That the State of Indiana possesses the power to regulate and control the traffic in intoxicating liquors has never been an open question.    It has exercised such right since it first

assumed the position of a State in the Union, and the only question now before us is as to whether our present law, assuming to do so, is void for the reasons suggested by the appellant in this case.

The assumption of the appellant that our law providing for the granting of license to retail intoxicating liquor secures to the citizens of this State rights not enjoyed by the citizens of other States, is not true in fact.   The law does not require that the person to whom the license is issued shall be a citizen of the State.   The law does require that he shall be a male inhabitant, but we need not stop to argue that there is a broad distinction between a citizen and a mere inhabitant.   It is not an unreasonable requirement that a person who desires to avail himself of a license to retail intoxicating liquor shall submit himself to the jurisdiction of the State, by becoming an inhabitant thereof, to the end that he may be readily apprehended and punished for any violation of the law in connection with his business.   In our opinion the law providing for the granting of license to retail intoxicating liquor is not subject to the objection urged against it by the appellant in this case.   *Wagner* v. *Town of Garrett*, 118 Ind. 114.

It is also contended that the court erred in refusing to instruct the jury in writing, as requested by the appellant, but it does not affirmatively appear by the record before us that any such request was made before the commencement of the argument in the cause.

The appellant at the proper time prayed the court to give to the jury the following instruction, viz. :

" If you should find the defendant guilty as charged, you may, in your discretion, return a verdict assessing a fine against him, and, also, find that he shall not pay the costs of this prosecution."

The court refused to give this instruction, and the appellant excepted.

We do not think the court erred in this ruling.   From

this instruction the jury doubtless would have been led to believe that if they found the appellant guilty, as charged, they had a discretion to fine him or not to fine him, as they might choose, when in fact they had no such discretion. If they found him guilty it was their duty to assess a fine against him of not less than twenty dollars. Nor do we think that the matter of relieving a party convicted of a violation of the criminal law from the costs of the prosecution a mere matter of arbitrary discretion.

What particular facts would authorize a court or jury, finding a defendant guilty, to relieve him from the payment of costs, we need not now inquire, but he should not be so relieved without some reason for so doing. This instruction proceeds upon the theory that it is a matter of mere arbitrary discretion, and in this we think it is erroneous.

The appellant, also, prayed the court to give the jury the following instruction, viz.: " If you are satisfied from the evidence that a jury has heretofore been empanelled and sworn to try the defendant on the charge contained in the affidavit in this cause, you must acquit him, for the reason that the State of Indiana has no right to place a man twice in jeopardy for the same offence."

The court did not err in refusing this instruction. If a jury had been previously empanelled to try the appellant on the charge contained in the affidavit in this case, and had been discharged at the appellant's request, or with his consent, or had been discharged after a reasonable time for deliberation, because they were unable to agree upon a verdict, such discharge would not entitle the appellant to an acquittal.

This instruction places the right of the appellant to an acquittal upon the mere fact that a jury had been empanelled to try him, without any regard to the facts which may have led to their discharge, and in this it was erroneous.

Finally: it is contended by the appellant that the circuit court erred in receiving the verdict of the jury in his absence.

It would seem to be a sufficient answer to this objection to say that it does not affirmatively appear by the record that the appellant was in the custody of the sheriff, nor does it appear, except by inference, that he was not present in court at the time the verdict of the jury was received. Such inference can not be permitted to overcome the legal presumption that everything was rightly done in court. If he was on bail, his absence from the court room when the verdict was returned was voluntary, and he can not be heard to complain.

After a careful consideration of all the questions presented we have reached the conclusion that .there is no error in the record.

Judgment affirmed.

